756 So.2d 193 (2000)
Anthony ACOSTA and Esperanza Acosta, Appellants,
v.
CREATIVE GROUP INVESTMENTS, INC. and Arlene Rodriguez, Appellees.
No. 3D99-1906.
District Court of Appeal of Florida, Third District.
April 12, 2000.
Rehearing Denied May 17, 2000.
Neustein & Neustein, P.A. and Charles L. Neustein, Miami Beach, for appellants.
Mark Alan Levine, Miami, for appellees.
Before JORGENSON, GREEN, and SHEVIN, JJ.
PER CURIAM.
This is an appeal from an order granting appellees', Creative Group Investments, Inc. and Arlene Rodriguez (collectively referred to as "Rodriguez"), Motion for Contempt and Sanctions against appellants, Anthony and Esperanza Acosta. We affirm.
Rodriguez and Anthony Acosta entered into a contract where Rodriguez agreed to supply money to Acosta to purchase automobiles. The automobiles would thereafter be sold and the profits would be split between them. Allegedly, Acosta obtained the money from Rodriguez to purchase automobiles and either kept the money or failed to sell the automobiles and split the profits with Rodriguez. Among those unsold automobiles, was a 1966 Corvette.
Rodriguez sued the Acostas for breach of contract including the misappropriation of certain automobiles, including the 1966 Corvette. On September 8, 1995, the trial court entered an order restraining the Acostas from "transferring, selling, encumbering and/or disposing" of specific automobiles without order of the court. Moreover, the order also provided that the specified automobiles, including the 1966 Corvette, were to be returned and/or released to Rodriguez for safe keeping.
Nearly two months later, the Acostas took possession of the subject 1966 Corvette and sold the vehicle, in direct contradiction of the trial court's order. Accordingly, the trial court subsequently entered an order granting Rodriguez' motion to repossess the motor vehicles specified in *194 the September 8, 1995 order (including the 1966 Corvette). The order to repossess required the Acostas to turn over the motor vehicles or the purchase price of the vehicles to Rodriguez' attorney's office forthwith. The Acostas appealed this order, which this court affirmed without opinion. See ESP Corp. v. Creative Group Invs., Inc., 678 So.2d 345 (Fla. 3d DCA 1996).
Rodriguez filed a motion for contempt against the Acostas on or about February 6, 1996. This motion was stayed pending the outcome of the appeal. Following this Court's affirmance, Rodriguez filed an emergency motion to hold the Acostas and their corporation, ESP Auto Brokers, Inc. ("ESP"), in contempt and/or to compel that the vehicles and/or their purchase price be turned over to Rodriguez. The motion was granted against ESP but stayed against the Acostas because they had recently filed personal bankruptcy. On November 4, 1996, Rodriguez filed a Verified Emergency Ex-Parte Motion for Possession of Vehicles and for Contempt. The trial court again found ESP in contempt of court for its failure to comply with the court's previous order requiring that all vehicles (and/or their purchase price) be returned or given to Rodriguez.
The bankruptcy court entered a Final Judgment in favor of Rodriguez, finding the Acostas' debt to be non-dischargeable in bankruptcy based upon fraud and other factors. Rodriguez later renewed the Motion for Contempt and Sanctions in the state court below for the Acostas' failure to obey the court's previous orders. The trial court set a hearing for May 18, 1999, on Rodriguez' motion for contempt via a rule to show cause.
At this hearing, Anthony Acosta appeared without Esperanza Acosta or their attorney. The court therefore reset the hearing for a week later at which time a full hearing was to be conducted including the introduction of evidence and/or testimony. At the hearing Rodriguez claims that she introduced evidence, including a sales slip for the 1966 Corvette, showing that the Acostas willfully violated the trial court's previous orders. The Acostas deny that any evidence was presented or considered by the trial court. Following the hearing, both sides were permitted and did file supplemental memorandums of law on the issues.
The trial court entered an order on July 15, 1999, holding the Acostas in contempt of court for their failure to obey the trial court's previous orders. Specifically, the order provided that "Anthony Acosta and Esperanza Acosta intentionally transferred or sold the [1966] Corvette which was the subject of this case, thereby willfully violating" its previous orders. The trial court further ruled that the Acostas could purge themselves of contempt by paying Rodriguez $37,500, which was the determined value of the 1966 Corvette, within seven days of the order. If the Acostas fail to purge themselves, the order further provides that additional sanctions, including the issuance of a Writ of Bodily Attachment, might result. The Acostas have appealed.
It has long been an established rule in Florida a that court has the inherent authority to enforce its orders by the exercise of its contempt powers.[1]See Johnson v. Bednar, 573 So.2d 822, 824 (Fla.1991); see also R.M.P. v. Jones, 419 So.2d 618, 620 (Fla.1982)(stating that "[i]t has long been the rule in Florida that courts have inherent contempt power to punish for violation of a valid court order."); South Dade Farms, Inc., 88 So.2d at 897 (a court has the authority to administer appropriate punishment for contemptuous conduct of the parties bound by its decree). Moreover, it is clear that in a *195 civil contempt case[2], as was the case here, that
the court may compel performance of a required act by coercive imprisonment or in the event that the violation of the decree has resulted in damages to the injured party, there is adequate authority to support the assessment of a compensatory fine to be paid by the wrongdoing party to the party injured.
South Dade Farms, Inc., 88 So.2d at 899.
Finally, the Acostas argue that the trial court had no evidence to support its order of contempt against them. Rodriguez, on the other hand, claims that evidence was adduced in the form of receipts reflecting that the Acostas intentionally sold the 1966 Corvette in direct violation of the trial court's order. Since the Acostas have failed to supply this Court with a transcript of the contempt proceedings, we must presume that the trial court's order was correct. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979). See also White v. White, 717 So.2d 89, 90 (Fla. 3d DCA 1998)(where there is no transcript of hearing in the appellate record the appellate court will not disturb the findings of the trial court); Rodwin-Pines v. Pines, 706 So.2d 946 (Fla. 3d DCA 1998)(stating that "the appellant's failure to file a trial transcript renders the record inadequate to demonstrate reversible error.").
Accordingly, for the reasons above, we affirm.
NOTES
[1] "Contempt" has been defined as

a disobedience to the Court, an opposing or a despising the authority, justice, or dignity thereof. It commonly consists in a party's doing otherwise than he is enjoined to do, or not doing what he is commanded or required by the process, order, or decree of the Court.
South Dade Farms, Inc. v. Peters, 88 So.2d 891, 898 (Fla.1956) (citation omitted).
[2] Appellants argue that the trial court effectively held them in criminal contempt without affording them the requisite due process requirements. Because we find that this was clearly a case of civil contempt, we disagree. See South Dade Farms, Inc., 88 So.2d at 899 (stating that "a criminal contempt proceeding is between the public and the defendant. It is not directly a part of the original cause. It involves punishment for an offense against the court itself as distinguished from the commission of an act in derogation of the rights of a party to the cause. A civil contempt proceeding naturally involves in some measure a transgression against the dignity of the court and the prestige of its order, however, it is in actuality a proceeding between the parties, and to the extent appropriate rules governing civil causes should apply. When a judgment or decree in favor of one party is disregarded or violated by another party to the injury of the former, it is then appropriate for the injured party to call upon the court to exercise its contempt powers in the enforcement of its decrees for the benefit of the party in whose favor the decree has been entered."). Id.